UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CHALLENGE AIRLINES (IL) LTD.,

Plaintiff,

v.

JET MIDWEST INC.,

Defendant.

**MEMORANDUM DECISION AND
ORDER**

25-cv-5288 (BMC)

**COGAN**, District Judge.

This is a trademark infringement case concerning the slogan "Challenge Accepted."

Plaintiff is a logistics airline that specializes in transporting challenging cargo such as racecars,

pharmaceuticals, and live animals.  Defendant is in the business of acquiring and dismantling

aircraft to resell parts and larger assets.  Plaintiff has used the slogan in various mediums since

2014.  Defendant started using it in 2022 on the advice of a third-party marketing firm.

Defendant brushed off plaintiff's cease-and-desist letters, leading to this lawsuit, and plaintiff has

moved for summary judgment.  For the reasons below, the motion is denied.

## BACKGROUND

The facts that matter are undisputed.[1]  Plaintiff is part of an international conglomerate

known as Challenge Group, comprised of other aviation-industry entities, each of which includes

the word "Challenge" in its name.  These entities collectively provide a broad array of services,

---

[1] The parties fiercely contest facts that are relevant to the second prong of plaintiff's trademark infringement claim, *i.e.*, the consumer-confusion analysis under Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961).  To that end, plaintiff has moved to strike defendant's expert reports because they are "unsworn, untested, and [were] served before [plaintiff] even could depose the experts or serve rebuttal reports."  However, as discussed below, the Court does not reach that issue because there is a genuine issue of material fact bearing on the first prong of the trademark infringement claim, *i.e.*, the validity of the mark.  The motion to strike is therefore moot.

including air cargo transportation; maintenance, repair, and overhaul ("MRO") services, ground handling, freight logistics, aircraft leasing and charters, part sales, warehousing, and airline management services.

Plaintiff employs the slogan "Challenge Accepted" in a few different contexts, but typically, it appears in plain text, under the Challenge Group trade name or in close proximity to it.  This appears in email signatures, marketing materials, and on plaintiff's aircraft themselves:





Defendant is a family-owned and family-run business that acquires and dismantles aircraft for parts, such as engines, that can then be resold to its clients.  These clients include familiar commercial airlines, MRO providers, and original equipment manufacturers.

In 2022, as defendant headed into its 25th year of business, it hired a marketing agency to help build a new brand identity.  After extensive interviews and analyses of survey responses, the marketing agency landed on "Challenge Accepted."  The marketing agency researched the slogan for possible use by competitors, and that search did not reveal plaintiff's use.  This is because, from defendant's perspective, plaintiff is an airline, and airlines are clients, not

2

competitors.  So, defendant saw no reason not to move forward with the marketing agency's idea, and began using the phrase in digital marketing, email signatures, etc.:

 

Two days before defendant intended to go public with the new slogan, one of defendant's executives spotted an aircraft at JFK airport with "Challenge Accepted" painted on the side.  She sent a photo of it to a senior executive along with the message, "It looks like they have the same slogan."  The senior executive forwarded the photo to the marketing agency with one word: "Yikes!" Nonetheless, defendant went ahead and publicly debuted their new brand identity.

Around the same time, plaintiff was undergoing its own rebranding campaign.  When defendant's executive spotted the plane bearing "Challenge Accepted" at JFK, plaintiff was known as "CAL Cargo Airlines."  A month later, plaintiff became Challenge Airlines.  Plaintiff thereafter filed two trademark applications with the U.S. Patent and Trademark Office ("USPTO") for the mark "CHALLENGE GROUP CHALLENGE ACCEPTED."  One mark was a stylized logo, and the other was the phrase's plain text.

A month after filing the applications, plaintiff sent defendant a cease-and-desist letter. That went unacknowledged and, a little over a year later, plaintiff sent another cease-and-desist letter, styled as a "final demand."  Shortly after receiving the "final demand" letter, defendant made the internal decision not use its "Challenge Accepted" logo because the senior executive

didn't "want any hassle from Challenge Airlines."  In a similar vein, defendant made efforts to avoid being placed in a booth next to any Challenge Group entities at tradeshows.

A few months later, plaintiff filed this lawsuit, alleging trademark infringement and unfair competition under both the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and common law. Plaintiff has moved for summary judgment on all counts.

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is warranted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view all facts in the light most favorable to the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

A party may not defeat a motion for summary judgment solely through "unsupported assertions" or conjecture.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  Rather, "'[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'"  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita, 475 U.S. at 586-87); see also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994).  Indeed, the non-moving party

must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." Anderson, 477 U.S. at 256.

## II.   Trademark Infringement

"The elements necessary to prevail on common law causes of action for trademark infringement and unfair competition mirror Lanham Act claims." RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc., 527 F. Supp. 3d 305, 322 (E.D.N.Y. 2021) (quotations omitted).  The Lanham Act prohibits the "use in commerce," without a trademark holder's consent, of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).

Conspicuously absent from the Lanham Act's prohibition on trademark infringement is any sort of mental-state requirement.  In other words, trademark infringement is a strict-liability offense, and thus a plaintiff "need not prove knowledge or intent." Spin Master Ltd. v. Alan Yuan's Store, 325 F. Supp. 3d 413, 421 (S.D.N.Y. 2018).  Damages may be "trebled for willfulness under 15 U.S.C. § 1117(b)," BTL Indus., Inc. v. Versalini Beauty & Spa Salon, No. 23-cv-8617, 2024 WL 3342293, at *6 (S.D.N.Y. July 8, 2024), but that is not necessary to establish liability.

"Under the Lanham Act, a plaintiff alleging trademark infringement must demonstrate that (1) 'it has a valid mark that is entitled to protection' and that (2) the defendant's 'actions are likely to cause confusion with [that] mark.'" Tiffany & Co. v. Costco Wholesale Corp., 971 F.3d 74, 84 (2d Cir. 2020) (quoting The Sports Auth., Inc. v. Prime Hospitality Corp., 89 F.3d 955, 960 (2d Cir. 1996)).  But where, as here, a "plaintiff cannot establish that its mark is entitled to

5

protection, the Court need not consider the second prong[.]" Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc., 478 F. Supp. 2d 347, 356 (E.D.N.Y. 2006), adopted, 478 F. Supp. 2d 340 (E.D.N.Y. 2007).

### A.    No Presumption of Validity

A trademark's entitlement to protection (i.e., its validity) is "presumptively satisfied," Tiffany & Co., 971 F.3d at 84, by the trademark's registration with the USPTO, see Guthrie Healthcare Sys. v. ContextMedia, Inc., 826 F.3d 27, 37 (2d Cir. 2016).  "When the mark is not registered, there is no presumption of validity and the burden is upon plaintiff to prove valid trademark use." W. R. Grace & Co. v. Union Carbide Corp., 581 F. Supp. 148, 152 n.7 (S.D.N.Y. 1983) (citing Reese Publ'g Co. v. Hampton Int'l Commc'ns., Inc., 620 F.2d 7 (2d Cir. 1980)).

Plaintiff contends that its "CHALLENGE ACCEPTED" mark is presumptively valid because: (1) plaintiff registered "CHALLENGE GROUP CHALLENGE ACCEPTED" with the USPTO; (2) the mark is "registrable" as evidenced by other entities that have registered it; and (3) plaintiff has a Co-Existence and Consent Agreement with SOS International LLC ("SOSI"), an entity who registered "CHALLENGE ACCEPTED."  That's all wrong.

First, plaintiff's registration of "CHALLENGE GROUP CHALLENGE ACCEPTED" does not invoke the presumption of validity.  The fact that "CHALLENGE ACCEPTED" constitutes half of plaintiff's registered mark does not magically turn it into a registered mark that is, by itself, presumptively entitled to protection.  To be sure, plaintiff could argue that defendant's use of the phrase infringes on plaintiff's "CHALLENGE GROUP CHALLENGE ACCEPTED" mark, but that is not the case plaintiff has brought.  Rather, plaintiff asserts it "owns common-law rights in CHALLENGE ACCEPTED," but such "marks have no

presumption of validity." Nike, Inc. v. Reloaded Merch LLC, 2023 WL 8879274, at *6 (S.D.N.Y. Dec. 22, 2023) (quotations omitted).

Second, the fact that other entities have successfully registered "CHALLENGE ACCEPTED" is irrelevant. For registration to constitute "*prima facie* evidence of the [mark's] validity," it must be "owned by a party to [the] action." 15 U.S.C. § 1115(a); see also 15 U.S.C. § 1057(b) ("A certification of registration . . . shall be *prima facie* evidence of the validity [and] the *owner's* exclusive right to use the registered mark") (emphasis added). Plaintiff attempted to register "CHALLENGE ACCEPTED" in 2019, but that application was deemed abandoned. See USPTO Serial No. 88379273 (Feb. 17, 2022).

Finally, plaintiff's Co-Existence and Consent Agreement with SOSI does not imbue it with SOSI's ownership of "CHALLENGE ACCEPTED." True, trademarks may be assigned, and the presumption of validity is thereby "transferred" in a sense. See, e.g., Guru Teg Holding, Inc. v. Maharaja Farmers Mkt., Inc., 581 F. Supp. 3d 460, 472 (E.D.N.Y. 2022) ("Because . . . the trademark assignments were valid, defendants have failed to overcome the Marks' presumption of validity."). But that is not what plaintiff's agreement with SOSI does; it is essentially a pact between plaintiff and SOSI not to sue each other, so long as plaintiff and SOSI stay in their respective lanes. Accordingly, the presumption of validity does not apply, and plaintiff bears the burden of showing that the mark is eligible for protection.

**B.    Eligibility for Protection**

"It is helpful to understand that trademark law designates four categories of inherent strength [which can] help determine whether a mark is 'entitled to protection' in the first place." City of N.Y. v. Henriquez, 98 F.4th 402, 412 (2d Cir. 2024). "From weakest to strongest, these are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." Id.

"A generic term, like automobile or aspirin, never is entitled to trademark protection," MirrorLite Mirror, Inc. v. Glassless Mirror Mfrs., Inc., No. 23-cv-3437, 2026 WL 1194594, at *6 (S.D.N.Y. May 1, 2026), because a mark holder "cannot deprive manufacturers . . . of the right to call an article by its name." Reese, 620 F.2d at 10; see, e.g., Henriquez, 98 F.4th at 412 (Marks "such as 'Honey Brown Ale,' for a brown ale brewed with honey," are entitled to "no trademark protection.").

"A 'merely descriptive' mark describes the qualities, ingredients, or characteristics of a good or service and similar goods [and services] can be described using the same descriptive qualities." Now-Casting Econ., Ltd. v. Econ. Alchemy LLC, No. 18-cv-2442, 2019 WL 4640219, at *5 (S.D.N.Y. Sept. 24, 2019) (citing Estate of P.D. Beckwith, Inc., v. Comm'r of Patents, 252 U.S. 538, 543-44 (1920)); see, e.g., PaperCutter, Inc. v. Fay's Drug Co., 900 F.2d 558, 560, 563 (2d Cir. 1990) ("'PaperCutter' is purely descriptive" of a business that "design[s] paper ornaments [which] consisted of folded paper that became three dimensional when unfolded"). As with generic marks, descriptive marks are generally unprotected. See Bernard v. Com. Drug Co., 964 F.2d 1338, 1340 (2d Cir. 1992). That changes if the mark holder can establish a so-called "secondary meaning," i.e., that the "public associat[es] the trademark with the holder's product or service." Id.

"A suggestive mark, as might be expected, suggests the product [or service], though it may take imagination to grasp [its] nature[.]" Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072, 1076 (2d Cir. 1993); Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988) (A suggestive mark "'requires imagination, thought and perception to reach a conclusion as to the nature of goods.'" (quotation omitted)); see, e.g., Gruner, 991 F.2d at 1076 ("Orange Crush" is suggestive of an orange-flavored beverage).

8

"An arbitrary mark is 'one that has a dictionary meaning – though not describing the product – like IVORY for soap.'" Marlinspike Hall LLC v. Bar Lab Concepts LLC, No. 23-cv-2997, 2023 WL 6847208, at *3 (S.D.N.Y. Oct. 17, 2023) (quoting Gruner, 991 F.2d at 1075-76). "[A] 'fanciful mark is a name that is made up to identify the trademark owner's product like EXXON for oil products and KODAK for photography products.'" Id. (quoting Gruner, 991 F.2d at 1076).

Here, plaintiff contends that "CHALLENGE ACCEPTED" is a valid trademark because it is suggestive or, alternatively, descriptive with an established secondary meaning. Defendant counters that the mark is either generic or descriptive with no secondary meaning and is therefore entitled to no protection. As discussed below, the mark is descriptive, and questions of fact exist as to whether plaintiff has shown a secondary meaning.

i.    The Mark is Not Suggestive

Plaintiff argues that "CHALLENGE ACCEPTED" is suggestive because "[c]onnecting 'accepting challenges' with transporting dangerous, oversized cargo and the other Challenge Group services requires an inferential leap." No reasonable jury would buy that. The phrase "challenge accepted" employs the noun version of "challenge" (defined as "a difficult task or problem"), and the past-tense transitive-verb version of "accept" (defined as "to endure without protest or reaction").[2]

As plaintiff puts it, "CHALLENGE ACCEPTED has appeared on every aircraft in the Challenge Group's fleet . . . since adoption." Thus, "[l]ittle imagination is required to realize," Flat Rate Movers, Ltd. v. FlatRate Moving & Storage, Inc., 104 F. Supp. 3d 371, 379 (S.D.N.Y. 2015), that "CHALLENGE ACCEPTED" refers to difficult cargo and plaintiff's agreement to

---

[2] See MERRIAM-WEBSTER, Challenge, https://www.merriam-webster.com/dictionary/challenge (2026); MERRIAM-WEBSTER, Accept, https://www.merriam-webster.com/dictionary/accept (2026).

transport it, *i.e.*, the challenge which plaintiff has accepted.  Plaintiff cannot be the only one allowed to advertise its willingness and ability to transport challenging cargo.  See Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 165 (2d Cir. 2016) ("a mark is more likely to be descriptive, rather than suggestive, if '[a]ccording [it] trademark exclusivity . . . would inhibit competitors from using descriptions of their competing [services].'" (quotations omitted)).

        ii.       The Mark is Not Generic

Defendant argues that "CHALLENGE ACCEPTED" is generic, and therefore unprotectable, because it is "a generic phrase that commonly appears in a variety of contexts," YouGottaEat, Inc. v. Checkers Drive-In Rests., Inc., 81 F. App'x 392, 394 (2d Cir. 2003), and therefore its validity "is debatable," id.  Defendant's reliance on YouGottaEat is misplaced.  In that case, the Second Circuit found it "debatable whether [the mark] is inherently distinctive . . . [or] has acquired distinctiveness." Id.  That "distinctiveness" inquiry is not about whether a mark is generic or descriptive, but whether a descriptive mark has a secondary meaning.  See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992) (Marks are "inherently distinctive" if their "intrinsic nature serves to identify a particular source.").

        iii.      The Mark is Descriptive

Second Circuit courts "more readily find a phrase descriptive when it is in common usage." Solid 21, Inc. v. Breitling U.S.A., Inc., 96 F.4th 265, 282 (2d Cir. 2024) (quoting Kelly-Brown v. Winfrey, 717 F.3d 295, 311 (2d Cir. 2013)).  Defendant asserts, and plaintiff does not dispute, "that 'CHALLENGE ACCEPTED' is a common English phrase used in pop culture and advertising . . . in a variety of fields."  Thus, it is clear that the real dispute in this case is whether "CHALLENGE ACCEPTED" has a secondary meaning pointing back to plaintiff.

iv.   Questions of Fact Bear on Secondary Meaning

"Secondary meaning is a question of fact, with the burden of proof on the party claiming exclusive rights in the mark."  Erchonia Corp. v. Bissoon, 410 F. App'x 416, 418 (2d Cir. 2011); Yarmuth-Dion, Inc. v. D'ion Furs, Inc., 835 F.2d 990, 993 (2d Cir. 1987) ("The existence of secondary meaning is an inherently factual inquiry.").  "Although the Second Circuit has stated that district courts should be cautious in" resolving "the question of secondary meaning" at "the summary judgment stage, it has nonetheless supported summary judgment in cases where the [nonmovant] has failed to raise a material issue of fact on the question of secondary meaning." DAG Media, 478 F. Supp. 2d at 344.

> The Second Circuit has identified six non-exclusive factors relevant to the secondary meaning inquiry: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage . . . (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use."

Easy Spirit, LLC v. Skechers U.S.A., Inc., 515 F. Supp. 3d 47, 61 (S.D.N.Y. 2021) (quoting Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc., 696 F.3d 206, 226 (2d Cir. 2012)).  The parties, by their silence on the issue, appear to agree that no consumer studies link "CHALLENGE ACCEPTED" to plaintiff, or that anyone has attempted to plagiarize the mark.

In support of the remaining factors, plaintiff offers the following uncontested evidence: advertising expenditures of $2 million over the course of 14 years; unsolicited media coverage in around 14 aviation-industry publications; sales success of $1 billion in revenue; and 12 years of uncontested use.  Defendant counters that plaintiff's advertising costs break down to a modest yearly amount; the publications plaintiff points to are simply reprints of its own press releases; the $1 billion in revenue is attributable to Challenge Group, not Challenge Airlines; and uncontested use is irrelevant when the question is exclusive use.

The question now is not whether a reasonable jury could find a secondary meaning based on plaintiff's evidence.  The question is whether plaintiff's evidence, when viewed in the light most favorable to defendant, nonetheless compels that conclusion.  It does not.

*Advertising Expenditures.*  Defendant contends that plaintiff's $2 million broken down over 12 years amounts to only $166,666 per year, which is too meager to show weigh in favor of a secondary meaning.  Notably, "[c]ourts have held far greater expenditures insufficient to support secondary meaning."  LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A., 209 F. Supp. 3d 612, 655 (S.D.N.Y. 2016) (collecting cases).  There's a more glaring problem, however, which is that plaintiff provides no evidence as to "whether the . . . advertising specifically directed consumers to the mark as an indication of source."  Id.; see Easy Spirit, 515 F. Supp. 3d at 62 ("Simply 'showing that a certain amount was spent on advertising provides little support for secondary meaning absent some demonstration that the advertisements caused consumers to associate the mark with the plaintiff'") (quotations omitted and alterations adopted).  Plaintiff has not established what amount, if any, of that $2 million was specifically geared towards attributing "CHALLENGE ACCEPTED" with Challenge Airlines.

*Unsolicited News Coverage.*  The Court disagrees with defendant's characterization of the news coverage of plaintiff's services as "merely reprints or rewrites of plaintiff's own press releases."  Nonetheless, the Court agrees that this factor does not weigh in plaintiff's favor. "'[A] few industry-specific articles that discuss its business and goods' . . . are insufficient to tilt the factor of unsolicited media coverage in [plaintiff's] favor."  Capri Sun GmbH v. Am. Bev. Corp., 595 F. Supp. 3d 83, 155 (S.D.N.Y. 2022) (quoting Giggle, Inc. v. netFocal, Inc., 856 F. Supp. 2d 625, 632 (S.D.N.Y. 2012)).  The publications that plaintiff points to are almost all

discrete aviation-industry publications, including the International Transport Journal, Freighter Trends, and Cargo News Wire.

*Sales Success.* Sales success "is relevant to the secondary meaning analysis because it 'might be indicative of whether consumers associate a product [or service] with its origin.'" Easy Spirit, 515 F. Supp. 3d at 64 (quoting GeigTech E. Bay LLC v. Lutron Elecs. Co., 352 F. Supp. 3d 265, 283 (S.D.N.Y. 2018)). Plaintiff provided its financial records which show a whopping $1 billion in revenue. But defendant asserts, and plaintiff does not dispute, that the "vast majority of [it] is related to air cargo services provided by Challenge Group." In other words, the bulk of that number apparently comes from entities other than plaintiff.

It is therefore unclear precisely how much of that $1 billion can be attributed to plaintiff. But even if it all were, the Court's conclusion would remain unchanged because "sales success alone cannot establish secondary meaning." Fashion Exch. LLC v. Hybrid Promotions, LLC, 697 F. Supp. 3d 86, 105 (S.D.N.Y. 2023) (quotations omitted). Thus, without more, this factor is at best neutral.

*Length & Exclusivity of Use.* Defendant is correct that "uncontested use" is the wrong metric because that speaks to whether the mark is generic. See USA Masters Weightlifting, Inc. v. USA Weightlifting, Inc., No. 25-cv-6095, 2026 WL 751299, at *2 (S.D.N.Y. Mar. 17, 2026) ("Courts evaluating genericness look to evidence of widespread uncontested use by competitors"). Plaintiff asserts, and defendant does not dispute, that "[n]o other company in the aviation industry uses CHALLENGE ACCEPTED." Still, the existence of plaintiff's consent agreement with SOSI, but not other entities that use the same phrase, suggests that plaintiff and SOSI are at least in overlapping industries, such that plaintiff's use was not "exclusive."

13

When considering these factors in the light most favorable to defendant, it is not clear that plaintiff has shown that "CHALLENGE ACCEPTED" has a secondary meaning. Accordingly, there is a genuine dispute of material fact as to whether the mark is valid. Consequently, the Court need not proceed to the second half of the trademark inquiry (*i.e.*, the likelihood of confusion), and a jury must resolve this case.

## CONCLUSION

Plaintiff's motion for summary judgment is denied.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
June 8, 2026

14